IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

2:39 pm, 2/21/13

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| HARRY TALERMO, ) | Case No.   11-20806 |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| RICHARD A. WIELAND, United ) | |
| States Trustee for Region 19, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No.  12-2009 |
| ) | |
| HARRY VILLE TALERMO, ) | |
| ) | |
| Defendant. ) | |

**OPINION ON COMPLAINT SEEKING TO DENY DEBTOR'S DISCHARGE**

On January 23, 2013, this matter came before the court for trial on the Complaint Seeking to Deny Debtor's Discharge filed by the United States Trustee ("UST") and the answer filed by Harry Ville Talermo ("Debtor"). At the conclusion of the trial, the court took the matter under advisement. Upon a review of the record, testimony, and evidence, the court is prepared to rule.

**Jurisdiction**

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(J). The UST seeks determination that the Debtor is ineligible for a discharge under 11 U.S.C.

§§727(a)(2), (a)(3), (a)(4) or (a)(5)[1] and Fed. R. Bankr. P. 4004.

**Findings of Fact**

Debtor filed for chapter 7 bankruptcy protection on July 25, 2011. At that same time, Debtor filed his Schedules and Statement of Financial Affairs. Gary Barney ("Trustee") was appointed as the chapter 7 trustee to administer the case.

Debtor was a partner of the business Wyoming West Designs ("WWD"). WWD had a loan with Jackson State Bank for a line of credit for the business. Wells Fargo took over Jackson State Bank and refused to continue to extend WWD's line of credit and wanted paid for the outstanding loan. Negotiations for a settlement failed. In March 2011, Wells Fargo was granted a summary judgment in the United States District Court for the District of Wyoming. Wells Fargo initiated collection proceedings on its judgment by garnishing Debtor's personal bank accounts.

As part of a divorce settlement in 2009, Debtor received a payment in the amount of $140,000.00. Debtor testified that he did not deposit the cashier's check into his bank accounts due to Wells Fargo Bank's judgment and garnishment proceedings.

On April 4, 2011, Debtor deposited the check into his son's Wells Fargo Bank account of which he was an authorized signatory. Debtor testified that he deposited the check to be able to cash it. On that same date, Debtor withdrew $50,000.00 from the account. On April 5, 2011, Debtor withdrew the balance of $90,000.00. Debtor had not used his son's account for any other transactions.

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

Page 2

Debtor testified that he gave the $140,000.00, in cash, to his mother, Kirstin Butzow ("Mother") in April 2011 when she came from Helsinki, Finland to visit him.[2] Debtor testified that the funds were a partial payment toward the amounts that Debtor had borrowed from his Mother over the course of years beginning in 1978 through 1982 for his education and financial support. Debtor testified that he continues to owe her the amount of $60,000.00. According to the Debtor's testimony, he assumes that his Mother took the money back to Finland with her at the end of her visit. Debtor does not have any documents regarding these loans and payments with his Mother. This is the first payment to his Mother that Debtor made on the outstanding loan.

Additionally, Debtor testified that he withdrew an additional $40,000.00 from his First Interstate Bank account in June 2011. He testified that he spent these funds on travel, day-to-day living expenses and "aid" to his family. Debtor distributed the following amounts:

| Approximate date | Recipient | Amount |
|---|---|---|
| May, 2, 2011 | Yvonna (daughter) | $4,500.00 |
| May 5, 2011 | Emilie (daughter) | $6,500.00 |
| May, 5, 2011 | Mother | $2,500.00 |
| June 30, 2011 | Ryan (son) | $3,000.00 |
| June, 2011 | "Travel related expenses to Finland" | $6,000.00 |
| July 24, 2011 | Ryan | $3,000.00 |
| July 10, 2011 | Yvonna | $2,500.00 |
| July, 2011 | "travel abroad in August" | $2,000.00 |

---

[2] The court granted the Trustee a default judgment against Debtor's Mother for the turn-over of the amount of $140,000.00.

Page 3

The July, 2011 travel expenditure was for Debtor to travel to his family's vacation home in Austria. Debtor also paid rent, pre-paid his rent through August 2011, and other living expenses. Debtor provided receipts for less that $1,000.00 in day-to-day living expenses. Debtor testified that he also paid $9,500 and $8,000 to Visa on July 12, 2011 and July 20, 2011 respectively, prior to filing his bankruptcy petition.

Additionally, on May 9, 2011, Debtor withdrew $9,000.00 from his First Interstate Bank account. Debtor testified that he did not recall how these funds were spent.

The court's review of Debtor's petition reflects that on the date that the petition and schedules were filed, Debtor listed non-priority unsecured claims in the total amount of $731,961.00 and secured claims in the amount of $43,828.00. Debtor did not list on the appropriate schedules or documents: (1) his Mother, as either a secured or unsecured creditor; (2) the cash payment in the amount of $140,000.00 to his Mother on his Statement of Financial Affairs ("SOFA"); (3) his son's Wells Fargo account which he was an authorized signatory and which he used to cash the divorce settlement cashier check; and, (4) payments to his family members.

According to Debtor's SOFA, in April and July, 2011, Debtor sold personal and real property for the amount of $22,300.00. Debtor indicated that he used $2,500.00 for expenses, but does not indicate on his SOFA where the remaining balance was spent. Additionally, Debtor was loaned an amount of $20,000.00 from a friend, Steve Robinson.[3] On November 9, 2011, Debtor amended his Schedule J. On December 23,

---

[3] The court entered an order granting summary for the Trustee regarding the adversary proceeding against Mr. Robinson, voiding the lien and for turnover of property of the estate.

Page 4

2011, Debtor filed an amended SOFA to include the $140,000.00 payment to his Mother.

**Discussion**

The UST seeks to deny Debtor's discharge alleging that Debtor (1) omitted disclosing transfers to his Mother in the amount of $140,000.00 and another $40,000.00 to other insiders; (2) failed to keep records of the transfers and disbursement of assets; (3) gave false testimony by failing to disclose the transfers at his §341 meeting of creditors; and, (4) failed to satisfactorily explain the distribution of the $40,000.00 in transfers made to each insider.

The Bankruptcy Code provides, in relevant part:

"The court shall grant the debtor a discharge, unless:

- ...the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed, property of the debtor, within one year before the date of the filing of the petition;[4]

- the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records and papers from which the debtor's financial condition or business transaction might be ascertained, unless such act or failures to act were justified under all the circumstances of the case;[5]

- the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account; presented or used a false claim; gave, offered received or attempted to obtain money, property or advantage or a promise of money property

---

[4] § 727(a)(2)(A).

[5] § 727(a)(3).

Page 5

> or advantage for acting or forbearing to act; or withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers relating to the debtor's property or financial affairs;[6] and,
>
> - the debtor failed to explain satisfactorily, before the determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."[7]

### § 727(a)(2) Intent to hinder or delay

The Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor. To deny a discharge under §727(a)(2), a court must find actual intent to defraud creditors.[8] The circumstances of the transaction must be examined.[9] Creditor must demonstrate debtor's fraud by a preponderance of evidence to warrant denial of discharge.[10] To obtain a denial of discharged, a plaintiff must prove: (1) that a transfer of property occurred; (2) that the debtor owned the property transferred; (3) that the transfer occurred within one year of filing the petition; and, (4) that the debtor had, at the time of the transfer, the intent to defraud a creditor.[11]

Debtor admitted during his testimony that he intended to pay his family members

---

[6] § 727(a)(4).

[7] § 727(a)(5).

[8] *In re Warren*, 512 F.3d 1241 (10th Cir. 2008).

[9] *In re Brown*, 108 F.3d 1290 (10th Cir. 1997).

[10] *In re Serafini*, 938 F.2d 1156 (10th Dir. 1991).

[11] *In re Seay*, 215 B.R. 780 (10th Cir. BAP 1997).

the funds that he had available to him rather than pay any of the debt owing or judgment entered in favor of Wells Fargo Bank. He testified that he gave his Mother $140,000.00 cash in April 2011 and he provided "aid" to his three children in various amounts totaling over $22,000.00 in the time period between May 2, 2011 through July 10, 2011. As debtor filed for Chapter 7 bankruptcy protection on July 25, 2011, these transferrs occurred within one year of his petition filing date. The court also finds that the Debtor had, at the time of the transfers, intended to defraud a creditor. Debtor specifically testified that he used an account that he had with his son to cash the divorce settlement cashier's check that he had in his possession for nearly two years. His testimony reflects he intentionally did not use his own accounts to forestall Wells Fargo from garnishing the funds. He testified that he wanted to pay his family the money.

Debtor knowingly and fraudulently concealed assets, and withheld and concealed information intending to hinder creditors and the Trustee. Debtor failed to disclose his interest in the $140,000.00 and subsequent funds in the amount of $49,000.00 at the §341 meeting of creditors. It was not until after the Trustee's attorney asked him questions about the funds from bank documents the Trustee had obtained, that the Debtor disclosed the assets and transfers. Debtor was "upset" that the Trustee had this information and questioned the Debtor about the assets and transfers at a deposition. He did not readily disclose these assets and transfers until confronted.

Debtor knowingly and fraudulently withheld and concealed financial information that would have provided the Trustee information concerning the nature and extent of

Page 7

Debtor's assets. Debtor testified that he answered any direct question put to him regarding his assets, implying that since he was not directly asked a question by the Trustee at the §341 meeting of creditors regarding this property and the transfers that he is in compliance with the Bankruptcy Code. The court finds that the Debtor repeatedly failed to be truthful and cooperate with the Trustee. Debtor's failure to provide complete and accurate disclosure of his assets and debts was not a mistake, but a pattern of concealing assets from the Trustee and Debtor's creditors. Based upon these acts and failure to disclose, the court finds that the UST established a basis for denial of Debtor's discharge under § 727(a)(2)(A).

### § 727(a)(3) Failure to Keep or Preserve Records

The Tenth Circuit stated that a prima facie case under 11 U.S.C. § 727(a)(3) requires the creditor to show that (1) the debtor failed to maintain and preserve adequate records; and, (2) the failure made it impossible to ascertain his or her financial condition and material business transactions. If the creditor makes such a showing, the burden then shifts to the debtor to justify his or her failure to maintain the records. The long-standing rule in the Tenth Circuit is that records need not be so complete that they state in detail all or substantially all of the transactions taking place in the course of the business. It is enough if they sufficiently identify the transactions that intelligent inquiry can be made respecting them.[12]

---

[12] *In re Stewart*, 263 B.R. 608 (10th Cir. BAP 2001) citing *Hedges v. Bushnell*, 106 F.2d 979 982 (10th Cir. 1939).

Page 8

Debtor is a sophisticated business man. He attended Oral Roberts University and graduated with a degree in business management and finance in 1981. He speaks three languages and appears to have traveled extensively for personal and business purposes. Debtor was a member of HGRR Group LLC and a fifty-percent shareholder of Wyoming West Designs II. Inc. which operated a business in Jackson, Wyoming.

Debtor failed to maintain any records regarding the unsecured loan from his Mother for his education and financial support purposes. He also failed to maintain any records regarding the repayment of $140,000.00 to his Mother. Debtor failed to maintain any records of the disbursements to his family members, his travel, or the majority of his day-to-day living expenses in the few short months prior to filing for chapter 7 bankruptcy protection. The court's calculation reflects that Debtor had access to approximately $231,000.00 in the few months prior to his bankruptcy filing. Debtor can only account for rental payments (both prior to filing and pre-payment for after filing); payment of the $140,000.00 to his Mother; distributions to his children; travel for himself in the amount of $8,000.00 (of which $2,000.00 were for pre-paid travel expenses paid for post-petition travel); payment on his Visa credit card in the amount of $17,500.00 and less than $1,000.00 of miscellaneous day-to-day living expenses. The court's calculations is that approximately $37,800.00 is unaccounted for and the Debtor could not recall where he had spent the money. Overall, the Debtor's failure to maintain and preserve adequate records made it impossible for the Trustee to ascertain Debtor's financial condition without the documents provided to him from a source other than the Debtor.

Page 9

The court finds that the UST established a basis for denial of Debtor's discharge under § 727(a)(3).

§ 727(a)(4) Fraudulent Conduct

In order to deny a debtor's discharge under §727(a)(4), plaintiff must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath related to a material fact. The plaintiff must prove these elements by a preponderance of the evidence. Once a plaintiff has met its burden of presenting prima facie evidence, the burden shifts to the debtor to provide a cogent explanation for the omissions or misstatements.[13] A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence. The fact that a debtor comes forward with omitted material on his own accord is strong evidence that there was no fraudulent intent in the omission.[14] Fraudulent intent may be deduced for purposes of denying discharge based upon false oath or account in connection with the bankruptcy case from facts and circumstances of the case.[15] To infer fraudulent intent, courts look for specific indica of fraud. Action from which fraudulent may be inferred include situations in which a debtor conceals pre-bankruptcy conversions, converts assets immediately before the filing of the bankruptcy petition, gratuitously transfers property, continues to use transferred property, and transfers property to family members. Courts also consider the

---

[13] *In re Phouminh*, 339 B.R. 231 (Bankr. D. Colo. 2005).

[14] *In re Brown,* 108 F.3d 1290 (10th Cir. 1997).

[15] *In re Calder*, 907 F.2d 953 (10th Cir. 1990).

monetary value of the assets converted in determining whether the debtor acted with fraudulent intent.[16] A false oath is "material" if it bears a relationship to debtor's estate or concerns discovery of assets or existence of disposition of debtor's property. Debtors must disclose all property and cooperate fully with the trustee. Badges of fraud which a bankruptcy court should consider include: (1) concealment of conversions; (2) conversion of property on eve of bankruptcy; (3) gratuitous transfers of property by debtor; and (4) debtor's continued use of transferred property.[17] A debtor's reliance on counsel in completing statements and schedules is no defense to material misstatements. Debtors have a duty to carefully and accurately complete their statements and schedules, especially since they sign them under penalty of perjury.[18]

Debtor knowingly and fraudulently made an oath and that oath related to a material fact. Debtor filed his bankruptcy petition and schedules without disclosing: (1) his Mother as a creditor; (2) payment of $140,000.00 to his Mother on or about April 15, 2011; (3) two separate withdrawals of $40,000.00 and $9,000.00 from First Interstate Bank in the months prior to filing his bankruptcy; and (4) disbursements of "aid" to family members in the three months prior to filing his bankruptcy petition.

Debtor concealed this property and these transfers until he was "caught" by the Trustee. Only then did the Debtor modify his SOFA to include the transfer of

---

[16] *In re Cary*, 938 F.2d 1073 (10th Cir. 1991).

[17] *In re Garland*, 417 B.R. 805 (10th Cir. BAP 2009).

[18] *In re Vigil*, 414 B.R 743 (Bankr. D.N.M. 2009).

$140,000.00 cash to his Mother. Other transfers occurred to family members within approximately three months prior to the Debtor filing for chapter 7 bankruptcy protection which the Debtor has never amended his schedule of SOFA to include. Debtor testified that the transfers to his family were not gifts or loans, but "aid." The court found Debtor's credibility while testifying to be incredible and disingenuous. Debtor's failure to disclose the assets and the transfers was intentional and not due to mere mistake or inadvertence. Had the Trustee not called him on the discrepancies, the court has no doubt that the Debtor would never have disclosed these assets and transfers. Finding that the Debtor intentionally misrepresented the information of his petition, schedules and bankruptcy documents, the court finds that the UST established a basis for denial of Debtor's discharge under § 727(a)(4).

§727(a)(5) Failure to Explain Loss

A party objecting to a debtor's discharge under this section has the burden of proving facts establishing that a loss of assets actually occurred. Once the objecting party meets its initial burden of proof, the burden then shifts to the debtor to explain the loss in a satisfactory manner.[19] The debtor's explanation for a diminution of assets must be specific and corroborated. An explanation of the debtor's circumstances in general terms that is merely suggestive of reasons that assets became depleted falls short of the mark.[20]

Debtor failed to explain the diminution of his assets. He testified that he could not

---

[19] *In re Stewart*, 263 B.R. 608 (10th Cir. BAP 2001).

[20] *Phouminh* at 248.

Page 12

recall where the amount of nearly $37,000.00 was spent in the few months prior to his filing for bankruptcy protection. The court finds that this falls far short of the mark for reasons that the estate's assets became depleted. The UST established a basis for denial of Debtor's discharge under § 727(a)(5).

**Conclusion**

A debtor seeking bankruptcy protection must disclose all assets and interest because full and honest disclosure is essential if the bankruptcy system is to function effectively. A bankruptcy discharge is reserved for an honest but unfortunate debtor. The court finds that Debtor filed for protection under the Bankruptcy Code, but failed to fulfill his duties to be honest, forthcoming and fully disclose his assets and transfers with the court, the Trustee and his creditors. The relief sought in the UST's Complaint is granted. Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), (a)(4) and (a)(5) shall be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 21 day of February, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    All on Matrix